UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
HEFLIN BARRY GEORGE,

                     Petitioner,

-against-

THE HONORABLE FRANCIS D. HARVEY,

                     Respondent.
------------------------------------------------------------ X

06 CV 102 (ARR)

NOT FOR ELECTRONIC OR PRINT PUBLICATION

OPINION AND ORDER

ROSS, United States District Judge:

On January 9, 2006, petitioner Heflin Barry George, a member of the United States Army Reserve, Individual Ready Reserve ("Ready Reserve"), filed a habeas corpus petition and a motion for preliminary injunctive relief. The underlying habeas petition alleges that respondent, the Secretary of the Army, violated petitioner's Fifth Amendment right to due process and § 555(e) of the Administrative Procedure Act ("APA") by failing to provide a statement of reasons for the denial of petitioner's application for an exemption from active duty. In his motion for a preliminary injunction, petitioner requests that the court enjoin respondent, the Secretary of the United States Army, from requiring petitioner to report for active duty until the court decides his habeas corpus petition. For the reasons explained below, the court denies petitioner's motion for a preliminary injunction.

## BACKGROUND

At issue here are the procedures governing an Army reservist's application for an exemption from active duty. A reservist called to active duty based on a partial mobilization may file for a delay or an exemption pursuant to AR 601-25, Chapter 4, Sections I and III. (See

1

Resp't Mem. at 4.) According to the regulation, members of the Ready Reserve called to active duty "will not be delayed or excused because of civilian employment or occupation" unless a specific exception applies. See AR 601-25 ¶ 4-2a (1986). Ready Reserve members may seek a delay or exemption for personal hardship. See id. ¶ 4-5 (citing id. ¶ 2-13d(2)(a) for further explanation of documentary evidence required for personal hardship requests). To meet the requirements for a personal hardship exemption, applicants must include "documentary evidence to show that entry on [active duty] ... would have a substantial adverse effect on an individual's immediate family." Id. ¶ 2-13d(2)(a). The regulation specifically states that "[c]hanged income and separation from the family are normal occurrences in military service and are not considered hardship." Id. (citing id. ¶ 2-28b(2), which provides examples of valid hardship requests, such as "[a] physician indicates that life expectancy of the patient is 60 days or less" or "[m]ore than one family member of the officer's immediate family is seriously injured").

Applications must be submitted by letter to the reservist's immediate commander, who is required to review the application and ensure that the application is complete before forwarding it to the approving authority. Id. ¶ 4-7d (explaining that "incomplete application(s) will be returned to the individual with specific instructions for completion"). The approving authority must, inter alia, "[c]onvene a board of officers to consider applications and make recommendations," "furnish final decision[s] to the applicant[s]," and "[i]nform each applicant of the right to appeal a denied request for delay or exemption." Id. ¶ 4-9a-c; see also id. ¶ 4-10 (explaining that board of officers "will recommend approval or disapproval of all requests").

Chapter 6 of AR 601-25 governs administrative appeals procedures for denial of exemption or delay requests. See id. ¶ 6-1. The application must state the reason for the appeal

and include additional information on which the appeal is based. Id. ¶ 6-2a. Similar to the direct review process, the immediate commander will review the appeal application and "procure any additional information necessary to determine the validity of the request." Id. ¶ 6-2b. If new information is added to the application, the record must show that the applicant was given an opportunity to provide a rebuttal. Id. An appeal board reviews the applications and recommends approval or denial of the delay or exemption requests.[1] Id. ¶ 6-3.

Petitioner enlisted in the United States Army on February 1, 2001 with the understanding that he would serve until at least January 31, 2009. (Resp't Mem. at 5.) From March 23, 2003 to July 16, 2003, he served with the Third Infantry Division in Iraq. (Pet. Mem. at 1.) Petitioner was honorably discharged from active duty on February 8, 2004 and assigned to the Ready Reserve. (Pet. Mem. at 1.) On June 8, 2005, the Army issued an order directing petitioner to report for active duty on July 10, 2005 pursuant to the President's Executive Order dated September 14, 2001, which required partial mobilization for Operation Iraqi Freedom.[2] (Resp't Mem. at 5).

On June 13, 2005, petitioner, acting pro se, filed for an exemption from active duty based on extreme personal hardship. (Pet. Mem. at 2.) In his application, petitioner explained that he was seeking an exemption because of the emotional and financial pressure on his family that

---

[1] The court notes that the regulations specifically state that AR 15-6, which requires more demanding procedures for investigations, is not applicable to any part of the delay and exemption application process. See AR 601-25 ¶¶ 4-10, 6-3.

[2] In his enlistment document, petitioner agreed to the following: "As a member of the Ready Reserve I may be required to perform active duty or active duty for training without my consent ... in time of national emergency declared by the President of the United States." (Resp't Ex. 3 § C(10)(1).)

3

would be created by his absence and the concern that activation would detrimentally affect his new career as a police officer. (See Resp't Ex. 5.) In support of his application, petitioner provided documentary evidence, including his marriage certificate, the birth certificate of his new baby boy, and a letter from the New York City Police Department ("NYPD") verifying his position as a candidate. (See Resp't Ex. 5.) On September 7, 2005, petitioner received a letter simply stating that "[u]nder the provisions of AR 601-25, chapter 4, [his] request for exemption is disapproved" and that the petitioner could appeal the decision. (See Resp't Ex. 6.) In his appeal, petitioner stressed that his marriage would suffer if his application was not granted and that his training as a police officer was already deteriorating due to his concerns about being placed on active duty again. (See Resp't Ex. 7.) In addition to the documents he had provided on direct review, petitioner provided a new letter from the NYPD, which stated that petitioner was a probationary police officer who required specialized training and requested a deferment until January 2006. (Resp't Ex. 7.) On October 20, 2005, petitioner's appeal was denied. (See Resp't Ex. 8.) The denial letter explained that "[u]nder the provisions AR 601-25, chapter 4, [petitioner] d[id] not meet the requirements for a hardship exemption/discharge," and notified him that his report date would be January 8, 2006. (Resp't Ex. 8.) Apparently obtaining an extension, petitioner's report date was January 22, 2006 at the time he filed his motion for a preliminary injunction. (See Pet. Mem. at 2.) Petitioner is currently scheduled for deployment on February 26, 2006. (Resp't Mem. at 6.)

## DISCUSSION

To prevail on his motion for a preliminary injunction, petitioner must demonstrate that, absent a preliminary injunction, he is likely to suffer irreparable injury. In addition, he must

4

show that either (a) he is likely to succeed on the merits of his case, or (b) he has raised questions going to the merits that are sufficiently serious to render them fair grounds for litigation, and that the balance of the hardships tips "decidedly toward the party requesting relief." Bery v. City of New York, 97 F.3d 689, 694 (2d Cir. 1996) (internal quotation marks and citation omitted). Where, as here, a movant seeks to enjoin "government action taken in the public interest pursuant to a statutory or regulatory scheme," a preliminary injunction will issue only upon a showing of the "more rigorous likelihood-of-success standard." Id. (internal quotation marks and citation omitted). Finally, "where 'the injunction sought will alter rather than maintain the status quo,' the movant must show 'clear' or 'substantial' likelihood of success." Rodriguez ex rel. Rodriguez v. DeBuono, 175 F.3d 227, 233 (2d Cir.1998) (quoting Jolly v. Coughlin, 76 F.3d 468, 473 (2d Cir. 1996)).

**A. Irreparable Injury**

Petitioner contends that he would suffer irreparable harm if the court declined to issue a preliminary injunction, thus requiring him to report to active duty. Specifically, petitioner claims that he would be required to leave the support and companionship of his wife, son, and family in New York to report for training in Fort Benning, Georgia on February 26, 2006. Also, he would have to leave his current training and employment as a probationary police officer with the NYPD. In addition to noting "the very significant loss of liberty that necessarily arises from active military service," (Pet. Reply Mem. at 19), petitioner emphasizes that he would suffer "tremendous uncertainty and psychological stress" pending the court's decision on his habeas corpus petition. (Pet. Mem. at 13.)

Respondent argues that these injuries do not meet the "particularly stringent standard,"

5

Stewart v. United States Immigration and Naturalization Serv., 762 F.2d 193 (1985), for irreparable injury in government personnel decisions. To the extent that petitioner claims that he and his family would suffer financial hardship because he would have to temporarily leave his new position at the NYPD, the court finds that monetary injuries are insufficient to constitute irreparable injury. See Sampson v. Murray, 415 U.S. 61, 90 (1974) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.").

However, petitioner claims more than mere monetary injury. He contends that he will suffer imminent loss of liberty, separation from his family, and severe emotional stress while he is awaiting the court's decisions on his habeas petitioner and a potential remand to the Army. It is undisputed that petitioner will be required to report for active duty to Fort Benning, Georgia on February 26, 2006. (See Resp't Mem at 6.) Assuming for the purposes of irreparable injury analysis that petitioner's claims are meritorious, the court finds that the petitioner would suffer a significant and irreparable loss of liberty and companionship of his family if this injunction were denied improperly. See Patton v. Dole, 806 F.2d 24, 28 (2d Cir. 1986) (finding that midshipman's involuntary induction into the Navy would constitute irreparable harm because "monetary damages for the resultant loss of liberty would not only be difficult to ascertain, but would, in any event, constitute inadequate recompense"); see also Parrish v. Brownlee, 335 F. Supp. 2d 661, 668 (E.D.N.C. 2004) (concluding that Army reservist's involuntary call to active duty would result in "loss of liberty and companionship of family" and, thus, "a strong

probability of irreparable harm to plaintiff pending trial and final judgment").

## B. Likelihood of Success on the Merits

### 1) Due Process Claim

Petitioner argues that the Army violated his Fifth Amendment right to due process because the Army violated its own regulations by failing to state the reasons for denying petitioner's exemption application. Respondent contends that petitioner's claim is not justiciable because no Army regulation has been violated and, therefore, the court may not review the Army's delay and exemption decision. While the court rejects respondent's argument that the court lacks jurisdiction to review petitioner's claim, the court nonetheless concludes that petitioner's due process claim will fail because he has not demonstrated that the Army's alleged procedural violation caused any prejudice.

"[The court's] reluctance ... to review discretionary military orders does not imply that any action by the Army, even one violative of its own regulations, is beyond the reach of the courts." Smith v. Resor, 406 F.2d 141, 145 (2d Cir. 1969). Even in the military context, "[w]here Congress or administrative agencies themselves lay down procedures and regulations, these cannot be ignored in deference to administrative discretion." Antonuk v. United States, 445 F.2d 592, 595 (6th Cir. 1971). However, "the due process clause here requires us not to measure the Army regulations against some constitutional standard, but instead determine whether the regulations were followed." Id.; see also Parrish, 335 F. Supp. 2d at 669. Accordingly, the Second Circuit has held that "a federal court may properly examine the decision to call a reservist for active duty in order to determine if the reservist's procedural rights under the applicable statutes and military procedures and regulations were violated in a manner which

cause substantial prejudice to the reservist." Smith, 406 F.2d at 146; see also Rohe v. Froehlke, 500 F.2d 113, 115-17 (2d Cir. 1974) (reviewing petitioner's claim that the Army failed to follow its own regulations governing the appeals of involuntary orders of reservists to active duty and finding that the Army violated its own regulations ); Nurnberg v. Froehlke, 489 F.2d 843, 848-49 (2d Cir. 1973) (reviewing and subsequently rejecting petitioner's claim that the Army prejudiced petitioner by failing to follow its own regulations governing conscientious objector status).

There is no explicit requirement that the Army provide a statement of reasons for the denial of an exemption application. See AR 601-25 ¶¶ 4-9a-c, 4-10. Relying on the Second Circuit's decision in Rohe v. Froehlke, 500 F.2d 113 (2d Cir. 1974), however, petitioner claims that because AR 601-25 grants applicants the right to appeal denials of exemption requests, it impliedly requires that the Army provide a statement of reasons for the initial denial. In Rohe, an army reservist was ordered to active duty as an "unsatisfactory reservist" due to his failure to report to mandatory summer training. 500 F.2d at 114. Rohe appealed the involuntary order pursuant to the appeals procedures provided by the governing regulation, AR 135-91. Id. at 115-16. On appeal, the Assistant Adjutant General considered new materials containing adverse allegations without notifying Rohe of their existence. Id. at 115. The Second Circuit held that—despite the fact that the regulation did not explicitly require the Army to inform Rohe of the adverse allegations in his record—"the right to file an appeal and to make a statement 'includes the right to file a meaningful statement, one based on all the facts in the file and made with awareness of the recommendations and arguments to be countered.'" Id. at 116 (quoting Gonzalez v. United States, 348 U.S. 407, 415 (1955)). In addition to finding that the Army violated its own regulation, the Second Circuit found that Rohe was prejudiced by the violation

8

because "the statements added much which appellant did not know was in the record." Id. at 117 n.4.

Applying the reasoning of Rohe, petitioner argues that if the Army fails to provide a statement of reasons to an applicant whose exemption request is denied, the applicant's right to appeal "is rendered meaningless" because it "is a necessary shot in the dark based on nothing more than speculation." (Pet. Reply Mem. at 17.) Thus, petitioner claims that the Army violated AR 601-25 by failing to provide a statement of reasons for the denial of his exemption application. Petitioner explains that the alleged violation was prejudicial because it was unclear whether his application was denied on the merits or whether it was denied due to lack of documentation.

The court finds petitioner's argument unpersuasive. Assuming arguendo that a statement of reasons is implicitly required by AR 601-25, petitioner has failed to establish any prejudice as a result of the Army's failure to comply with its own regulation. At most, the record reveals that petitioner sought a personal hardship exemption due to the emotional and financial strain his absence would leave on his family and the fact that he was starting a new career. The regulation explicitly states that these reasons are insufficient to meet the criteria for a hardship exemption. See AR 601-25 ¶¶ 4-2a, 2-13d(2)(a). Even if his situation satisfied the criteria for a hardship exemption, petitioner fails to allege that he had other documents, information, or arguments supporting his application.[3] Indeed, it appears that petitioner's assertion that he was prejudiced is

---

[3] The regulation also requires that petitioner's immediate commander notify him, both on direct review and on appeal, if the documentary evidence in his petition is inadequate for any reason. See AR 601-25 ¶¶ 4-7d, 6-2b. Nothing in the record indicates that petitioner's immediate commander him notified him that the documentary evidence provided in support of his petition was inadequate. Petitioner does not allege that his immediate commander failed to notify of him

9

simply based on the fact that the Army violated its own regulation. However, Second Circuit precedent instructs the court that petitioner must show prejudice in the sense that the outcome of petitioner's underlying claim could be adversely affected by the violation. In Rohe, the Second Circuit reversed the district court's decision to affirm the denial of the reservist's exemption application, finding that the Army's procedural violation "might be relevant" to whether his case was appropriately decided. 500 F.2d at 117. In contrast, the Second Circuit denied a reservist relief in Nurnberg v. Froehlke, 489 F.2d 843 (2d Cir. 1973), finding that he was not harmed by the Army's failure to show him an adverse report considered to deny him status as a conscientious objector because he had reviewed another report containing the same information. 489 F.2d at 848. Given that "[i]t is basic that the petitioner ... must establish harm or prejudice as a result of [the procedural violation]," id., and petitioner has failed to make such a showing, his due process claim cannot be sustained.[4]

---

of such an inadequacy, nor is there any indication that he did not submit the appropriate documents. Thus, the record appears to establish that—contrary to petitioner's assertion—petitioner was aware that the approving authority had all the necessary information before it.

[4] Petitioner also argues that the court must find a violation of due process under the analysis set forth in Bandoy v. Commandant of the Fourth Naval District, 495 F. Supp. 2d 1092 (E.D. Pa. 1980). In Bandoy, the court reviewed the Navy's denial of the petitioner's application for a hardship discharge pursuant to a regulation similar to the one at issue here. See 495 F. Supp. 2d at 1094. The court recognized that providing a statement of reasons for denial of a discharge application is "necessary to preserve a seaman's due process right to subsequent judicial review of the Navy's decision; otherwise meaningful review would be an impossibility." Id. at 1095. However, the court also recognized that it must first decide the threshold issue of whether petitioner had established a prima facie case for a hardship discharge. Id. at 1095-96.

The court concluded that the petitioner had, in fact, established a prima facie case because the hardship involved a serious, non-temporary situation with his wife, who was suicidal and relied on her husband for support. Id. at 1096. The court distinguished Bandoy's case from Rickson v. Ward, 359 F. Supp. 328 (S.D. Cal. 1973), where a Navy crew member sought discharge because, inter alia, his wife was pregnant. In Rickson, the court determined that the

10

## 2) Section 555(e) of the APA

Petitioner also argues that respondent violated § 555(e) of the APA by failing to provide a statement of reasons for denial of petitioner's exemption application. Respondent argues that the court lacks jurisdiction to review this claim because the disposition of delay and exemption applications are not reviewable under the APA. While the court rejects respondent's argument that the court lacks jurisdiction to review petitioner's claim, the court concludes that respondent did not violate § 555(e) of the APA because petitioner was fully informed of the reasons for the denial of his exemption application.

Respondent argues that Second Circuit precedent restricts any review of dispositions of delay and exemption applications under the APA. While the APA specifically excludes from the scope of agency review certain military activity, such as courts martial, military commissions, and military authority exercised in the field in time of war or in occupied territory, 5 U.S.C. § 551(1)(F)-(G), "the APA's legislative history clearly indicates that it applies to other military functions." Roelofs v. Sec'y of the Airforce, 628 F.2d 594, 599 (D.C. Cir. 1980). The Second

---

petitioner failed to establish a prima facie case for discharge because his reasons for discharge were specifically considered insufficient under the regulation at issue. See 359 F. Supp at 333-34. Thus, the court sustained the Navy's denial of petitioner's discharge application. Id. at 334.

    The court notes that the approach set forth in Bandoy and Rickson has never been adopted in the Second Circuit. Moreover, the Second Circuit has held that requests for exemptions based on hardship are discretionary decisions and are, therefore, unreviewable on the merits. See Ornato v. Hoffman, 546 F.2d 10, 14-15 (2d Cir. 1976); Schonbrun v. Commanding Officer, Armed Forces, 403 F.2d 371, 374-75 (2d Cir. 1968). In any event, applying the approach to petitioner's case, it is clear that petitioner has failed to establish a prima facie case of personal hardship. Like Rickson, petitioner's reasons for exemption—career goals and emotional and financial stress on his family—fit squarely within the reasons that have been specifically excepted from AR 601-25. See AR 601-25 ¶¶ 4-2a, 2-13d(2)(a). Thus, unlike Bandoy, petitioner has failed to establish a prima facie case of hardship and the court need not require the Army to provide a statement of reasons for its denial of petitioner's exemption application.

11

Circuit has also recognized that "Congress apparently intended not to exempt Army personnel decisions except to the extent that the decision 'is committed to agency discretion by law' so as to render inapplicable the provisions of [§] 10(e)."[5] Ornato, 546 F.2d at 14. Citing Ornato and an earlier case, Schonbrun, respondent appears to be arguing that the disposition of a delay and exemption application is discretionary and, therefore, unreviewable. Respondent is correct that the court is limited by precedent and may not review the disposition of petitioner's exemption request for abuse of discretion or lack of basis in fact. See Ornato v. Hoffman, 546 F.2d 10, 14-15 (2d Cir. 1976); Schonbrun v. Commanding Officer, Armed Forces, 403 F.2d 371, 374-75 (2d Cir. 1968). However, petitioner is not asking the court to review respondent's denial of his exemption application under the abuse of discretion standard of § 706(2)(A). Petitioner is simply arguing that respondent violated § 555(e) by failing to provide a statement of reasons for the denial of petitioner's application. Thus, Ornato and Schonbrun are not controlling here. The court therefore rejects respondent's argument that it lacks jurisdiction to review petitioner's claim under § 555(e) of the APA.

Petitioner urges the court to adopt the reasoning set forth by the D.C. Circuit in Roelofs to conclude that § 555(e) applies to facts before the court. In Roelofs, the D.C. Circuit held that application of regulations governing the Airforce Discharge Review Board ("DRB") and Board for the Correction of Military Records ("BCMR") is subject to the requirements of § 555(e) of the APA. 628 F.2d at 600-01. Section 555(e) of the APA provides that:

> Prompt notice shall be given of the denial in whole or in part of a written application, petition, or other request of an interested person made in connection with any agency proceeding. Except in

---

[5] Section 10(e) of the APA is currently codified at 5 U.S.C. § 706.

affirming a prior denial or when the denial is self-explanatory, the notice shall be accompanied by a brief statement of the grounds for denial.

While the regulation governing BCMRs explicitly requires the Secretary of the Airforce to provide a brief statement of reasons for denying relief, the D.C. Circuit held that "[§] 555 is not limited to cases where a specific statutory prescription exists, but applies 'according to the provisions thereof.'" Roelofs, 628 F.2d at 600. Moreover, the court determined that "the requirement ... obtains even though the request pertains to a matter of discretion or grace, not one of entitlement." Id. Finding that the Airforce's denial was neither "affirming a prior denial" or "self-explanatory," the D.C. Circuit determined that the Airforce's failure to provide reasons for denying the petitioner's request for an honorable discharge violated § 555(e) of the APA. See id. at 600-01.

The reasoning set forth in Roelofs arguably applies to the facts before the court. As stated earlier, neither Ornato or Schonbrun foreclose the application of § 555(e) to military delay and exemption decisions. Respondent has cited no other authority suggesting that § 555(e) does not apply here. Assuming § 555(e) applies, the court concludes that respondent provided a sufficient statement of reasons for the denial of petitioner's application or fits within the "self-explanatory" exception to the provision. As discussed at length earlier, petitioner's reasons for seeking an exemption from active duty were explicitly listed as insufficient in the governing regulation. See AR 601-25 ¶¶ 4-2a, 2-13d(2)(a). In its denial letter, the Army specifically cited Chapter 4 of AR 601-25—which included or cross-referenced the criteria required for a personal hardship exemption—as the basis for the denial. (See Resp't Ex. 6.) Courts have consistently held that the requirements imposed by § 555(e) are modest, Roelofs, 628 F.2d at 601, and do not

13

require the agency to provide "an extensive exegesis of the underlying reasoning" of the decision. Neal v. Sec'y of the Navy, 639 F.2d 1029, 1038 (3d Cir. 1981). Given that petitioner clearly sought an exemption for reasons explicitly barred by the section of the regulation cited in the Army's denial letter, the court concludes that respondent provided sufficient information to petitioner to satisfy the requirements of § 555(e). See Nicholson v. Brown, 599 F.2d 639, 648 n.9 (5th Cir. 1979) (finding that "[t]he statement of the criteria applied by the review panel, a copy of which was attached to the notice of denial ... satisfies the requirements of [§ 555(e)]").

## CONCLUSION

Given that plaintiff has failed to establish a substantial likelihood of success on the merits, the court holds that a preliminary injunction is not warranted. Accordingly, petitioner's motion for preliminary injunctive relief is hereby denied.

SO ORDERED.

Allyne R. Ross
United States District Judge

Dated: February 14, 2006
Brooklyn, New York

SERVICE LIST:

Counsel for Petitioner

Raymond Jewell Toney
Law Offices of David P. Sheldon
34-16 30th Avenue, 3rd Floor (#2)
Astoria, NY 11103

Counsel for Respondent

Kenneth A. Stahl
United States Attorney's Office
Eastern District of New York
147 Pierrepont Street
Brooklyn, NY 11201